**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| NTSEH MONIKANG,<br><br>Plaintiff,<br>v.<br><br>FEDERAL COMMUNICATIONS COMMISSION,<br><br>Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | Civil Action No. 25-cv-03352 (TSC) |

**MEMORANDUM OPINION**

This case, brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *see* Complaint ("Compl."), ECF No. 1, is before the court on the Motion to Dismiss or for Summary Judgment ("MSJ"), ECF No. 8, filed by Defendant the Federal Communications Commission ("FCC"), and the Cross-Motion for Summary Judgment ("X-MSJ"), ECF No. 12, filed by Plaintiff Ntseh Monikang ("Monikang"). For the reasons explained below, the FFC's Motion for Summary Judgment is GRANTED, and Plaintiff's Cross-Motion is DENIED.

**BACKGROUND**

Starting in 2014, Monikang was employed by Universal Service Administrative Company ("USAC") as a database engineer whose responsibilities included "designing, maintaining, and securing the database systems" supporting USAC's administration of the Universal Service Fund ("USF"), a federal telecommunications program managed by the Federal Communications Commission ("FCC"). *See* X-MSJ Exhibit 1, Pl.'s Declaration ("Pl. Decl."), ECF No. 12-1, ¶ 2. On January 21, 2022, USAC placed Monikang on unpaid leave and terminated his access to all USAC systems, and then effectively terminated him on February 4, 2022. *See id.* ¶ 11. He was terminated for alleged violation of the USAC's COVID-19 vaccine mandate, for which he had been denied a religious exemption. *See id.* ¶¶ 4–11; X-MSJ ¶ 6.

On November 11, 2024, Monikang submitted a FOIA request to the FCC seeking records related to USAC's vaccine mandate policy. *See* Pl. Decl. ¶ 14; Compl. Exhibit 1 (Pl.'s FOIA Request) ("FOIA Request"), ECF No. 1-2. More specifically, the FOIA request sought information under the following seven subparts: (1) documentation identifying the individuals or departments responsible for approving USAC's COVID-19 vaccine mandate; (2) the date on which the policy was officially approved and any relevant amendments; (3) the total number of employees who applied for exemptions to the COVID-19 vaccine mandate, including religious, medical, or other exemptions; (4) information on the number of employees who chose not to complete the exemption application process and either complied with the mandate or were terminated due to non-compliance; (5) data on belief systems or reasons for abstention listed by applicants in exemption applications; (6) records on how each application was reviewed, who reviewed it, and the criteria used to determine approvals or denials, and; (7) all communications, discussions, or directives involving USAC and/or FCC personnel about the review and handling of exemption applications and mandate policy implementation. *See* FOIA Request.

On November 15, 2024, the FCC denied Plaintiff's FOIA request. *See* Pl. Decl. ¶ 15; Compl. Exhibit 3 (FCC Denial Letter) ("Denial Ltr."), ECF No. 1-3. The FCC explained, in pertinent part, that

> the FOIA applies to federal agency records, meaning materials that are in an agency's possession and control. Materials that are not in the possession or control of an agency, however, are not agency records subject to the FOIA. As applied to the instant matter, USAC is not a federal agency subject to the FOIA. To the extent that USAC may possess records concerning its administration of the Universal Service Fund on behalf of the FCC, those records may be potentially subject to the FOIA. Records related to USAC's COVID-19 vaccination policy (or personnel records generally) are not agency records subject to the FOIA as the FCC neither possess or controls any such records. Beyond that, we have no reason to believe that there are

> any records within the FCC relating to USAC's COVID-19 vaccination policy or the implementation thereof. As such, we do not have any records to provide with this response.

*See* Denial Ltr.

On December 17, 2024, Monikang filed an administrative appeal, arguing that the requested materials "fall within FOIA's scope due to the FCC's extensive oversight and control over the USAC's operations, including delegation of federal duties for USF administration, establishment of the regulatory framework, monitoring via audits/reporting/enforcement, and issuance of Memorandums of Understanding (MOUs) defining the USAC's operational policies and responsibilities." Compl. ¶ 10; *see* Pl. Decl. ¶ 16; Compl. Exhibit D (Pl.'s Appeal), ECF No. 1-4. The FCC acknowledged receipt of the appeal December 31, 2024, but to date, it has not issued any determination. *See* Compl. ¶¶ 11–13; Pl. Decl. ¶ 17; Compl. Exhibit E (Appeal Acknowledgement Letter), ECF No. 1-5.

On September 19, 2025, Monikang filed this lawsuit, alleging that the FCC has "wrongfully withheld the requested records[,]" Compl. ¶ 20, and that the records sought are, in fact, agency records, *see id.* ¶¶ 15–17, because "the FCC exercises sufficient control over USAC through its delegation of federal duties, establishment of the regulatory framework, monitoring via audits and enforcement, and issuance of MOUs, as detailed in the appeal, directly satisfying the control test articulated in the cited precedents[,]" *id.* ¶ 18. He seeks immediate production from the FCC of records responsive to his FOIA request. *See id.* ¶¶ 1, 3, 20.

On February 23, 2026, Monikang filed his combined Opposition and Cross-Motion for Summary Judgment, to which the FCC filed a Reply and Opposition, ECF No. 17.[1] Finally, on

---

[1] An duplicate of this submission is also docketed at ECF No. 18.

March 8, 2026, Monikang filed a Reply ("Pl. Reply"), ECF No. 20, in response to the FCC's Opposition.

**LEGAL STANDARD**

In a FOIA case, a district court reviews the agency's decisions *de novo* and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). The "vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Office of U.S. Trade Rep*., 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. Fed. Trade Comm'n*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (quoting *Ctr. for Auto Safety v. Nat'l Highway Traffic Safety Admin*., 452 F.3d 798, 805, (D.C. Cir. 2006)), *cert. denied*, 587 U.S. 937 (2019); *see also* Fed. R. Civ. P. 56(a). However, the mere existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247–48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is "material" only if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (per curiam).

In the FOIA context, "summary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. Drug Enforc. Admin.*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (quoting *Jud. Watch, Inc. v. Secret Serv*., 726 F.3d 208, 215 (D.C. Cir. 2013)); *see also Students Against Genocide v. Dep't of State*, 257 F.3d 828, 833 (D.C. Cir. 2001) ("[A]n

agency is entitled to summary judgment if no material facts are in dispute and if it demonstrates 'that each document that falls within the class requested either has been produced . . . or is wholly exempt from the Act's inspection requirements.'") (quoting *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978)). An agency's declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Shapiro v. Dep't of Justice,* 40 F.4th 609, 613 (D.C. Cir. 2022) (quoting *Bartko v. Dep't of Justice*, 898 F.3d 51, 74 (D.C. Cir. 2018); *SafeCard Services, Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)) (internal quotation marks omitted), *cert. denied*, 143 S.Ct. 526 (2022).

Furthermore, "to satisfy FOIA's aims of providing more transparency into the workings of the government," an agency must generally demonstrate that it conducted an adequate search for responsive records. *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022). This demonstration "entails a 'show[ing] that [the agency] made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested.'" *Id*. (quoting *Oglesby v. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)). Notably, the "adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comp. of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

**DISCUSSION**

The FCC raises two primary arguments, both rooted in Monikang's alleged failure to comply with the "agency records" requirement of the FOIA. *See* MSJ at 1; *see also* 5 U.S.C. § 552(a)(4)(B) (mandating that the FOIA apply only to materials qualifying as "agency records"). It argues that Monikang (1) does not seek identifiable agency records, and (2)

requests non-agency records. *See id*. For the reasons explained below, the court agrees, and finds that the FCC is entitled to summary judgment.

i. Requests for Unidentifiable Records

FOIA limits access to agency records, but the statute itself does not define the term. *Amer. Civil Lib. Union. CIA*, 823 F.3d 655, 662 (D.C. Cir. 2016), *cert. denied*, 581 U.S. 938 (2017). The Supreme Court has suggested that agency records include, for example, "books, papers, maps, photographs, machine readable materials, or other documentary materials." *See Forsham v. Harris*, 445 U.S. 169, 183 (1980). Courts have thus construed the term "records" synonymously with "documents," and an agency is not obligated to "provide information that is separate from documents themselves." *Jordan v. Drug Enforcement Admin*., No. 22-2195, 2023 WL 2809132, at *3 (D.D.C. Apr. 6, 2023) (citing *Jud. Watch*, 726 F.3d at 216; *Forsham*, 445 U.S. at 177).

Four of the seven subparts in Monikang's FOIA Request do not state valid FOIA requests. Subpart two asks for the date on which the USAC's COVID-19 vaccine policy was officially approved and any relevant amendments; subpart three asks for the total number of USAC employees who applied for exemptions to the COVID-19 vaccine mandate, including religious, medical, or other exemptions; subpart four asks for information regarding the number of employees who declined to complete the exemption application process and either complied with the mandate or were terminated due to non-compliance, and; subpart five asks for data reflecting the belief systems or reasons for abstention listed by applicants in exemption applications. *See* FOIA Req.

These requests for specific facts and statistics, not agency records. *See Jordan*, 2023 WL 2809132, at *3. He is, in essence, asking the FCC to answer questions, and courts in this district

have consistently held that FOIA does not "require[ ] an agency to answer questions disguised as a FOIA request." *Hudgins v. IRS*, 620 F. Supp. 19, 21 (D.D.C. 1985) (citing *Di Viaio v. Kelley*, 571 F.2d 538, 542 (10th Cir. 1978)), *aff'd*, 808 F.2d 137 (D.C. Cir. 1987), *cert. denied*, 484 U.S. 803 (1987); *see Powell v. Internal Rev. Serv*., 255 F. Supp. 3d 33, 43 (D.D.C. 2017) (explaining that FOIA does not require an agency to "provide a requestor with specific information or answer questions"); *Maydak v. Dep't of Justice*, 254 F. Supp. 2d 23, 46 (D.D.C. 2003) (finding that a request consisting of "a series of questions or requests for information . . . beyond the scope of the FOIA"); *Frank v. Dep't of Justice*, 941 F. Supp. 4, 5 (D.D.C. 1996) (holding that agencies are "not required, by FOIA or by any other statute, to dig out all the information that might exist, in whatever form or place it might be found, and to create a document that answers plaintiff's question").

Nor does the FOIA, as Monikang proposes, require an agency to "conduct research," *see Nat'l Sec. Counselors v. CIA*, 898 F. Supp. 2d 233, 269 (D.D.C. 2012), *aff'd*, 969 F.3d 406 (D.C. Cir. 2020), or entertain a "general request for data, information and statistics," *see Krohn v. Dep't of Justice*, 628 F.2d 195, 198 (D.C. Cir. 1980). The "FOIA does not provide individuals with the right to embark on "an all-encompassing fishing expedition[.]" *Bloeser v. Dep't. of Justice*, 811 F. Supp. 2d 316, 321 (D.D.C. 2011) (internal quotation marks and citation omitted). Similarly, a FOIA request is not a vehicle for conducting an investigation into an agency's prior actions. *See Flowers v. IRS*, 307 F. Supp. 2d 60, 72 (D.D.C. 2004).

As the FCC points out, these subparts are more akin to interrogatories or requests for production of documents, *see* MSJ at 12–13, 15, better suited for Monikang's employment discrimination lawsuit filed against the FCC and USAC, *see Monikang v. FCC, et al*., 25-cv-04362 (TSC) (D.D.C. filed Dec. 14, 2025), should that case reach the discovery stage. Indeed,

Monikang repeatedly contends that the records he seeks "are essential to [his] discrimination claims pending in this district," *see* Pl. Decl. ¶ 19; *see also id.* at 1 (explaining that he requests "records central to this discrimination claim"); X-MSJ at 2–3 (same), and will show the FCC's "compliance or non-compliance with federal employment anti-discrimination law during an active federal program administration period," *see* X-MSJ at 3. But the FOIA is "not a substitute for discovery rules which govern civil and criminal litigation where 'different considerations' are at issue[,]" *Clay v. Dep't of Justice*, 680 F. Supp. 2d 239, 248 (D.D.C. 2010) (quoting *Stonehill v. IRS*, 558 F.3d 534, 538 (D.C. Cir. 2009)); *see Di Viaio*, 571 F.2d at 542–43 ("[I]t is clear that nothing in [the FOIA] requires 'answers to interrogatories' but rather and only disclosure of documentary matters which are not exempt."); *see also Lukas v. Fed. Commun. Comm.*, 19-465, 2020 WL 1065700, at *5 (D.D.C. Mar. 5, 2020) ("The Court cannot do anything about alleged violations of other statutes that are not in question in this lawsuit, even if this FOIA request is somehow related to proving that the FCC violated statutes other than FOIA."), *aff'd*, No. 20-5082, 2020 WL 5904442 (D.C. Cir. Aug. 7, 2020) (per curiam). This distinction exists because a FOIA disclosure is contemplated to be released to the public at large and is not predicated on the requester's individual needs. *See id.*; *see also Hudgins*, 620 F. Supp. at 21 ("FOIA creates only a right of access to records, not a right to personal services.").

Accordingly, subparts two through five do not properly seek agency records, and the court cannot compel the FCC to, as Monikang demands, compile information to address what are essentially questions, *see, e.g.*, Pl. Decl. ¶ 19 (asking "who," "what," and "whether" questions in discussing the substance of his FOIA Request). Therefore, it will grant the FCC's motion for summary judgment as to subparts two through five. *See, e.g., Anderson v. Dep't of Justice*, 518 F. Supp. 2d 1 (D.D.C. 2007) (entering summary judgment for the agency where the plaintiff's

FOIA requests were tantamount to "questions or requests for explanations of policies or procedures") (citing *Zemansky v. Envt'l. Prot. Agency*, 767 F.2d 569, 573 (9th Cir. 1985) (affirming grant of summary judgment on requester's counterclaim seeking explanations of the agency's policies and actions)) (other citations omitted).

ii. Requests for Non-Agency Records

Notwithstanding the above, the court also finds that *all* subparts of Monikang's FOIA Request seek non-agency records. As discussed, an "agency record" is not explicitly defined by the FOIA, so the court must analyze the records sought under the two-part test set forth by the Supreme Court in *Dep't of Justice v. Tax Analysts*, 492 U.S. 136 (1989), which defines an agency record as one that, at the time of the FOIA request, the agency (1) creates or obtains, and (2) controls. *See id.* at 144–45; *see also Kissinger v. Report. Comm. for Freed. of Press*, 445 U.S. 136, 151–52 (1980) ("the FOIA is only directed at requiring agencies to disclose those 'agency records' for which they have chosen to retain possession or control.").

With respect to the first prong, agency records include only those that have "been in fact obtained," not those that "merely could have been obtained." *Tax Analysts*, 492 U.S. at 144 (quoting *Forsham*, 445 U.S. at 186). And, with respect to the second prong, whether an agency controls a record depends upon five factors memorialized in *Burka v. Dep't of Health & Hum. Servs.*, 87 F.3d 508, 515 (D.C. Cir. 1996): "(1) the intent of the document's creator to retain or relinquish control over the records; (2) the ability of the agency to use and dispose of the record as it sees fit; (3) the extent to which agency personnel have read or relied upon the document; and (4) the degree to which the document was integrated into the agency's record system or files[,]" *Cause of Action Inst. v. Off. of Mgmt. & Budget*, 10 F.4th 849, 855 (D.C. Cir. 2021) (quoting *Burka*, 87 F.3d at 515) (cleaned up). Furthermore, a record is only under agency

control if it came "into the agency's possession in the legitimate conduct of its official duties[,]" *Tax Analysts*, 492 U.S. at 145, because "the FOIA does not cover 'information in the abstract[,]'" *id.* at 145–46 (quoting *Forsham*, 445 U.S. at 185).

The FCC argues that it did not create, obtain, or control any of the records Monikang seeks, and therefore they are not *agency* records. *See* MSJ at 7–12. In support, the FCC submits a Declaration authored by Daniel Daly, the FCC's Managing Director within the Office of the Managing Director ("OMD")—the agency's administrative liaison to USAC. *See* MSJ Exhibit A (Declaration of Daniel Daly) ("Daly Decl."), ECF No. 8-2, ¶ 1. Daly is a senior manager and subject matter expert on the FCC's relationship with USAC; he works with USAC "to coordinate its implementation of various federal laws and related administrative guidance, and [to] provide direction and oversight with respect to the USAC's operations as they relate to that implementation, including budgeting, contributions, debt management, investigations, information technology, and procurements." *See id*. Daly has been employed by the FCC in multiple roles spanning decades, most recently as Deputy Managing Director from July 2022 until February 9, 2026, when he was promoted to his current role as Managing Director. *See id*. He attests that he submits his Declaration based on his own personal knowledge and upon his review of the FCC's records and governing authorities. *See id.* ¶ 2. In light of this information, the court finds that Daly's Declaration is made in good faith.

The Daly Declaration explains that USAC "is an independent, not-for-profit private corporation chartered in Delaware. The FCC relies on the USAC for assistance in administering the USF as authorized by section 254 of the Communications Act, 47 U.S.C. § 254." *Id.* ¶ 3. The USF "consists of money collected from telecommunications companies that is dedicated to fulfilling the goals of universal service[,]" that helps provide communities across the country

affordable telecommunications and telehealth services, *see id*. ¶ 4. The FCC is "aided by the USAC" in collecting fees from interstate telecommunications providers and distributing those fees to targeted populations through the USF's programs. *See id.* The FCC's oversight of USAC is governed by (1) the Communications Act; (2) the FCC's own regulations, and; (3) a Memorandum of Understanding ("MOU") executed between the FCC and USAC. *See id.* ¶ 5 (citing https://www.fcc.gov/sites/default/files/usac-mou.pdf) (MOU between the FCC and USAC) ("MOU")) (last visited Sept. 17, 2026).

The MOU includes a provision governing FOIA Submissions. *See* Daly Decl. ¶ 6; MOU § IV (I). It states that certain USAC records are considered FCC agency records under the FOIA, namely,

> records of USAC directly relating to the USF, and program contributors and beneficiaries, including program forms and other data submitted by USF stakeholders and USAC-produced records related to USF contributors and program beneficiaries, including program forms and other data submitted by USF stakeholders and USAC-produced records related to USF contributors and program beneficiaries, are subject to the FOIA and the Commission's FOIA implementing regulations, 47 CFR §§ 0.441, *et seq*.

*See* MOU § IV (I); *see also* Daly Decl. ¶ 6. In the same provision, the FCC and USAC mutually acknowledge that "other records generated or received by USAC may also meet the definition of 'agency records." *See* MOU § IV (I); *see also* Daly Decl. ¶ 8.

Daly attests that, pursuant to FOIA law and the terms of the MOU, Monikang's FOIA request does not seek FCC agency records. *See* Daly Decl. ¶¶ 7–8, 10, 13–14. The only USAC materials explicitly recognized as FCC agency records in the MOU are records regarding the USF's administration. *See* Daly Decl. ¶ 14 (citing MOU § IV (I)). Monikang does not seek records about the USF's administration; he seeks records about the USAC's internal personnel policies and practices, over which the FCC bears no authority. *See id.* ¶ 14. Daly explains that,

because the FCC does have any involvement with USAC's personnel policies and practices, including the COVID-19 vaccine mandate, it has never (1) created, obtained, or controlled the requested records; (2) exercised, or even had, any authority to use or dispose of them; (3) relied upon them in carrying out its official duties, or; (4) integrated them into any FCC record system or files. *See id.* ¶¶ 13–14.

In other words, because Monikang *specifically* requested information about the USAC's COVID-19 vaccine mandate, and the development and execution of that mandate, the FCC was able to determine from the face of the Request that he sought non-agency records, and as a result, a search was essentially futile. *See id.* ¶¶ 7–8, 10, 13–14; *see also Vaughn v. Rosen*, 484 F.2d 820, 826 (D.C. Cir. 1973) ("[A]ffidavits are equally trustworthy when they aver that all documents . . . are unidentifiable as when they aver that identified documents are exempt."), *cert. denied*, 415 U.S. 977 (1974). However, the FCC also determined that, if it possessed any responsive records, however unlikely, those records would be maintained by OMD. *See id.* ¶ 11. So, although it was under no obligation to do so, the FCC searched OMD's records and found no materials responsive to Monikang's FOIA request. *See id.* ¶ 12.

The Daly Declaration is sufficient to show that the FCC neither created nor obtained, nor controlled the requested records, and therefore, they do not qualify as agency records. Daly's statements are particularly credible when viewed in combination with his intrinsic knowledge of the relationship between the FCC and USAC, and what agency records the FCC maintains as a result of that relationship. *See Am.-Arab Anti-Discrimination Comm. v. Dep't of Homeland Sec.*, 516 F. Supp. 2d 83, 87–88 (D.D.C. 2007) (finding no-search declaration was sufficient where the agency's Deputy Assistant Secretary for Operations, offered statements based on personal knowledge, and in light of his high ranking position.). Because the FCC is not, and has never

been, involved in the USAC's personnel policies, including its COVID-19 vaccine mandate, it does not possess records on those subjects. Daly's statements are thus "sufficient—if not exactly to show the adequacy of the search, then to explain why a search would be futile and is unnecessary." *See id.* (finding sufficient the agency's "explanation that ICE neither maintains data on arrestees' ethnicity or religion nor uniformly collects such information on race"); *see also Stein v. Central Intell. Agency*, 454 F. Supp. 3d 1, 23 (D.D.C. 2020) ("Through affidavits or declarations, an agency can establish that '[a] search would have been futile' by showing that it 'does not maintain any records' related to the subject of the request.") (quoting *Cunningham v. Dep't of Justice*, 40 F. Supp. 3d 71, 85 (D.D.C. 2014)).

Consequently, because the FCC does not maintain the requested records, it was under no obligation to conduct a futile search for same. *See Espino v. Dep't of Justice*, 869 F. Supp. 2d 25, 28 (D.D.C. 2012); *see also Cunningham*, 40 F. Supp. 3d at 83 (holding that "an agency is not required to expend its limited resources on searches for which it is clear at the outset that no search would produce the records sought."). Put differently, because the FCC neither possessed nor controlled the records sought by Monikang, the agency's non-disclosure does not violate FOIA because it has not 'withheld' anything." *DiBacco v. U.S. Army*, 795 F.3d 178, 192 (D.C. Cir. 2015) (citing *Kissinger*, 445 U.S. at 150). Courts in this jurisdiction have consistently found agency "searches" adequate where no search was performed if the agency was "unlikely" to possess responsive documents. *See All Party Parliam. Grp. on Extraord. Rendition v. Dep't of Defense*, 134 F. Supp. 3d 201, 206 (D.D.C. 2015) ("The NSA . . . argues that, because its function is limited solely to signals intelligence, it is unlikely to possess any [responsive] documents . . . and is not required to search its records. . . [t]he Court agrees and concludes that a search for the documents requested would be futile[.]"); *see also, e.g.*, *MacLeod v. Dep't of*

*Homeland Security*, No. 15-1792, 2017 WL 4220398, at *10–11 (D.D.C. Sept. 21, 2017) (granting summary judgment where "the declarant whose testimony DHS has provided explains that no DHS component maintains information pertaining to visas for diplomats or government officials from foreign countries or any other records potentially responsive to MacLeod's FOIA request" and explaining that it "is clear beyond cavil that an agency cannot improperly withhold records that it does not maintain"); *Earle v. Dep't of Justice*, 217 F. Supp. 3d 117, 123–24 (D.D.C. 2016) (granting summary judgment to agency on FOIA claim where the declarant explained that the agency did not maintain records sought, such that a search for those records would be futile); *Reyes v. Enivron. Prot. Agency*, 991 F. Supp. 2d 20, 26 (D.D.C. 2014) ("Where the Government's declarations establish that a search would be futile[,] the reasonable search required by FOIA may be no search at all.") (quoting *Amnesty Int'l USA v. CIA*, No. 07-5435, 2008 WL 2519908, at *11 n.17 (S.D.N.Y. June 19, 2008)); *Brehm v. Dep't of Defense*, 593 F. Supp. 2d 49, 50 (D.D.C. 2009) (finding search adequate based on the declarant's "conclusion that 'it is unlikely that other CIA directorates would possess records responsive to Plaintiff's request'"); *see also Whitaker v. Dep't of Commerce*, 970 F.3d 200, 207 (2nd Cir. 2020) (affirming summary judgment for agency by "[d]rawing primarily from cases within the D.C. Circuit that have considered the circumstances under which an agency may decline to conduct a FOIA search" and finding "no reason to depart from the sensible and persuasive approach employed by the courts that have considered this question, . . . conclud[ing] that an agency need not conduct a search that it has reasonably determined would be futile.").

For the court to "hold otherwise would require the agency to engage in a pointless search to gather detailed information that would, on this theory, be required to show that the agency need not engage in that very search." *See Leopold v. Dep't of Defense*, 752 F. Supp. 3d 66, 89

(D.D.C. 2024). Indeed, here, despite its lack of obligation, the FCC engaged in that pointless search and found nothing. *See Baldwin v. Small Business Admin*., No. 16-1365, 2017 WL 2455026, at *1 (D.D.C. June 6, 2017) (finding that the agency "went beyond its legal obligation" by conducting a search where the plaintiff failed to request agency records).

Monikang challenges the FCC's no-records response to his FOIA Request, arguing that the search was inadequate because the records he seeks are, in fact, agency records. *See* X-MSJ at 1, 3–4.

Monikang starts with the first prong of the *Tax Analysts* test—creation or obtainment. *See Tax Analysts*, 492 U.S. at 144–45. As for creation, he focuses solely on subpart seven of his request, *see* X-MSJ at 4; Pl. Reply at 1–2, which seeks "[a]ll communications, discussions, or directives involving USAC and/or FCC personnel about the review and handling of exemption applications and mandate policy implementation[,]" *see* FOIA Req. He asserts that because subpart seven requests the "FCC employees' own communications about the USAC mandate," the resulting responsive records would have been "created by FCC employees." *See* X-MSJ at 4; Pl. Reply at 1–2. But this argument is circular. Monikang asks specifically for communications about implementation of the COVID-19 vaccine policy and the USAC's treatment of its employees' exemption applications—areas where the FCC is not involved at all. *See* Daly Decl. ¶¶ 7–8, 10, 13–14. Accordingly, no such "communications" can plausibly exist, and even if they did, the FCC stated that it searched for them and found nothing responsive.

As for obtainment, Monikang argues that the FCC should have contacted USAC to determine if responsive agency records existed, particularly because the MOU contains the "catch-all clause" acknowledging that "other records generated or received by USAC," outside of USF-related documents, "may also meet the definition of 'agency records.'" *See* X-MSJ at 3;

Pl. Decl. ¶ 10; Pl. Reply at 1–3 (quoting MOU § IV (I)). Again, this argument is circular. Davy attests that none of the records that Monikang seeks are agency records because the FCC had no involvement in USAC's COVID-19 vaccine mandate and its implementation. *See* Daly Decl. ¶¶ 7–8, 10, 13–14. Therefore, it would be futile for the FCC to coordinate with USAC, because even if the USAC maintains records about the vaccine mandate, those records *still* do not qualify as FCC agency records, under either the MOU's designated inventory of qualifying documents, or under the catch-all provision, because they address topics outside of the FCC's purview.

Monikang argue further that if the FCC "had requested and received" the requested records from USAC after receiving his FOIA Request, "they would have become agency records." *See* X-MSJ at 4. But this argument is self-serving. The FOIA "imposes no obligation to . . . *procure* a record in response to a request." *Kissinger*, 445 U.S. at 151 (emphasis in original) (internal quotation marks and citation omitted). And just because the FCC and USAC are in a formal cooperative relationship does not mean that, by virtue of a FOIA request, the latter's records automatically convert into records created or controlled by the former. *See Viola v. Dep't of Justice*, 2019 WL 2437692, at *3 (D.D.C. June 11, 2019) (finding that records sought from federal agencies regarding a joint state and federal task force were not agency records, even if those federal agencies "may have been able to access and review the records," because the agencies neither controlled the records nor had the ability to dispose of the records as they saw fit) (citing *Gilmore v. Dep't of Energy*, 4 F. Supp. 2d 912, 917 (N.D. Cal. 1998) ("The FOIA applies only to records that have in fact been obtained, and not to records that merely could have been obtained, by the agency.")); *Buholtz v. U.S. Marshals Serv.*, 233 F. Supp. 3d 113, 116 (D.D.C. 2017) (finding that records sought from USMS relating to one of its contract facilities did not convert the facility's records into agency records created or controlled by USMS because

USMS did not exercise extensive supervision and control over the records' creation.), *appeal dismissed*, No. 17-5038, 2017 WL 2859545, (D.C. Cir. June 21, 2017).

In an effort to avoid this conundrum, Monikang pivots to the control prong of the *Tax Analysts* test, contending that the FCC does, in fact, control the records sought. *See* X-MSJ at 3. He argues that, because the FCC manages other parts of its relationship with USAC, e.g., "IT, investigations, debt management, contributions, procurement, and compliance with federal requirements[,]" it is unlikely that it would not also manage the USAC's immunization policies. *See* X-MSJ at 1–3; Pl. Decl. ¶¶ 16, 20; Pl. Reply at 2–3. He argues that "[w]hether the vaccine-mandate records fall within that clause given the FCC's oversight of USAC's operations, budgeting, and compliance, is a disputed question of fact that cannot be resolved on the current record." *See* Pl. Reply at 2–3.

There is, however, no such dispute. The Daly Declaration—which is according a presumption of good faith—states that the FCC plays no role in USAC's personnel management, including its immunization policies, and anything akin to same. *See* Daly Decl. ¶¶ 7–8, 10, 13–14. The Declaration cannot be rebutted by Monikang's unsupported speculation that the FCC is more involved with USAC's day-to-day personnel management than it admits, *see Children's Health Defense v. Nat'l Institutes of Health*, No. 23-1016, 2026 WL 2491388, at *4 (D.D.C. Aug. 25, 2026) (plaintiff's "speculation" that agency "failed to exhaust all possible leads" did not "raise a materially factual dispute to preclude a judgment" for the agency); *Wright v. Admin. for Children and Families*, No. 15-218, 2016 WL 5922293, at *6–9 (D.D.C. Oct. 11, 2016) (finding no merit in "plaintiff's purely speculative contentions" that agency was "required to perform the more exhaustive search the plaintiff apparently demands," after agency sufficiently "attested to the unlikelihood of the existence of any responsive agency records"); *Chong v. Drug Enforc.*

*Admin*., No. 85–3726, 1988 WL 26083, at *4 (D.D.C. Mar. 14, 1998) (finding "unfounded speculation" insufficient to defeat a suitable agency FOIA declaration), *aff'd*, 929 F.2d 729 (D.C. Cir. Apr. 9, 1991); *see also Jud. Watch, Inc. v. Fed. Housing Finance Agency*, 646 F.3d 924, 928 (D.C. Cir. 2011) (holding that a failure to satisfy the fourth *Burka* factor—requiring that an agency record be integrated into an agency's record systems or files—is, standing alone, fatal to a FOIA claim, where the FHFA, a conservator for Fannie Mae, submitted a declaration establishing that it never read or relied on the Fannie Mae's documents, nor were Fannie Mae's records ever integrated into FHFA's files). Accordingly, with no compelling evidence to the contrary, the court finds that Monikang's FOIA Request sought non-agency records.

Monikang also raises additional miscellaneous arguments generally challenging the FCC's search and response. First, he argues that four days is insufficient time to conduct an adequate search in response to his FOIA Request. *See* X-MSJ at 1–2, 4. Second, he suggests that Daly is an unqualified declarant because he "became Managing Director seven days before signing" his Declaration. *See id.* ¶ 9. But, without more, the court simply "does not find these cavils sufficient to create a material doubt . . . that the search was reasonably calculated to uncover all relevant documents." *Blixseth v. Immig. and Cust. Enforc*., No. 19-1292, 2020 WL 210732, at *4 (D.D.C. Jan. 14, 2020) (finding no merit in plaintiff's argument that the agency "did not spend enough time searching" where he "offered no explanation as to why 20 minutes per person would be insufficient to uncover responsive documents") (internal quotation marks and citations omitted). Monikang does not explain why four days is inadequate for the FCC to reach a determination, particularly where, as here, the agency was able to discern from the face of the FOIA Request that he sought non-agency records.

Nor is the court persuaded by Monikang's challenge to Davy's credentials. Although, Davy was made Managing Director of the OMD just days before executing his Declaration, prior to this promotion, he served as OMD's Managing Director for over three and a half years, and he has been employed by the FCC for 19 years. *See* Davy Decl. ¶1. Indeed, in addition to serving as the current head of department, Davy is an expert on the relationship between the FCC and USAC. *See id.* He is thus qualified to determine whether any responsive agency records exist. *See Cunningham*, 40 F. Supp. 3d 71 at 85 (finding that the agency's rationale for not conducting a search was sufficient where the declarant was familiar with the records that the agency maintained, and the plaintiff "provided no reason to doubt her averments.").

Finally, to the extent that Monikang insinuates that duplicity is afoot because he has been denied records by another federal agency in a different FOIA case in which the government is represented by the same Assistant United States Attorney, *see* X-MSJ at 1–3 (citing *Monikang v. EEOC*, No. 25-cv-03351 (TSC)), the court finds such unsupported insinuation to be groundless, *see Webb v. Dep't of Army*, No. 22-cv-02236, 2022 WL 17851470, at *1 (D.D.C. Oct. 7, 2022) (dismissing the plaintiff's claims for alleged FOIA violations predicated on a government conspiracy against him), *aff'd*, No. 22-5292, 2023 WL 2564344 (D.C. Cir. Mar. 20, 2023) (per curiam). An agency's response is tailored to the particular FOIA request at issue, *see Campbell v. Dep't of Justice*, 164 F.3d 20, 28 (D.C. Cir. 1998); *Hooker v. Dep't of Health & Human Servs.*, 887 F. Supp. 2d 40, 52 n.11 (D.D.C. 2012), *aff'd*, No. 13-5280, 2014 WL 3014213 (D.C. Cir. May 13, 2014) (per curiam), and different requests filed in different FOIA actions generally have no bearing on one another, *see Nash v. Dep't. of Justice*, 992 F. Supp. 447, 449 (D.D.C. 1998), *aff'd*, No. 98-5096, 1998 WL 545424 (D.C. Cir. July 20, 1998) (per curiam); *see also Szymanski v. Drug Enforc. Admin.*, No. 93–1314, 1993 WL 433592, at *3 (D.D.C. Oct. 6, 1993)

(explaining that a court cannot allow a FOIA complaint to "become the narrow edge of a wedge which forces open the court house door to unrelated claims against unrelated parties[,] and that a plaintiff is "entitled to make his case on those matters is a separate action."). This is particularly true in this case, where it is clear that the respective agencies are "applying *different* reasons to withhold information related to *different* requests[,]" *Maryland v. Dep't of Vet. Affs*., No. 14-1318, 2015 WL 13676389, at *2 (D.D.C. Feb. 5, 2015) (emphasis in original).

Accordingly, Monikang has not presented evidence sufficient to create a genuine dispute of material fact that the records requested were FCC agency records. The FCC is therefore entitled to summary judgment.

**CONCLUSION**

For the foregoing reasons, the FCC's Motion for Summary Judgment is granted, and Monikang's Cross-Motion for Summary Judgment is denied. Monikang's pending Motion for Discovery, ECF No. 13, Motion to Expedite, ECF No. 15, and Motion to Consolidate, ECF No. 10, this matter with *Monikang v. EEOC*, No. 25-03351 (TSC), are denied as moot. A separate Order accompanies this Memorandum Opinion.

Date: September 22, 2026

Tanya S. Chutkan
TANYA S. CHUTKAN
United States District Judge